15 MAG 1056

**ORIGINAL**

Approved: _Rebekah Donaleski_
REBEKAH DONALESKI
Assistant United States Attorney

Before:   HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York



U.S. DISTRICT COURT
FILED
MAR 31 2015
S. D. OF N. Y.

DOC # 1

------------------------------------ X
                                      :
UNITED STATES OF AMERICA              :   **SEALED**
                                      :   **COMPLAINT**
                                      :
            -v-                       :   Violation of 18 U.S.C. §§
                                      :   1028A, 1344, 1349
DEVEN K. BLACK,                       :
                                      :   COUNTY OF OFFENSE:
            Defendant.                :   BRONX
                                      :
------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        DEANNA PENNETTA, being duly sworn, deposes and says
that she is a Special Agent with the Federal Bureau of
Investigation ("FBI"), and charges as follows:

                    COUNT ONE

              (Bank Fraud Conspiracy)

        1.    From at least in or about July 2014 up to and
including in or about January 2015, in the Southern District of
New York and elsewhere, DEVEN K. BLACK, the defendant, and
others known and unknown, unlawfully, willfully, and knowingly
did combine, conspire, confederate, and agree together and with
each other to violate Title 18, United States Code, Section
1344.

        2.    It was a part and an object of the conspiracy
that DEVEN K. BLACK, the defendant, and others known and
unknown, would and did execute and attempt to execute a scheme
and artifice to defraud financial institutions, and to obtain
moneys, funds, credits, assets, securities, and other property
owned by, and under the custody and control of, such financial
institutions, by means of false and fraudulent pretenses,
representations, and promises, to wit, BLACK obtained funds by

causing fraudulent checks to be deposited at TD Bank and Capital One Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation.

## Overt Acts

3.     In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed and caused to be committed in the Southern District of New York and elsewhere:

a.     On or about July 22, 2014, DEVEN K. BLACK, the defendant, deposited a check in the amount of approximately $69,900, made payable to BLACK, into BLACK's Individual Retirement Account ("IRA") at TD Bank (the "BLACK TD IRA Account").

b.     On or about August 1, 2014, a check in the amount of approximately $69,900, made payable to BLACK, was deposited into the BLACK TD IRA Account.

c.     On or about December 27, 2014, BLACK deposited a check in the amount of approximately $64,600, made payable to BLACK, into BLACK's IRA Account at Capital One (the "BLACK CO IRA Account").

d.     On or about January 6, 2015, BLACK attempted to deposit a check in the amount of approximately $64,600, made payable to BLACK, into the BLACK CO IRA Account.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

(Bank Fraud)

4.     From in or about July 2014 through in or about January 2015, in the Southern District of New York and elsewhere, DEVEN BLACK, the defendant, willfully and knowingly did execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the federal government, and to obtain the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations and promises, to wit, BLACK obtained funds by causing fraudulent checks to be deposited at federally insured financial institutions.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE

### (Aggravated Identity Theft)

5.    In or about December 2014, in the Southern
District of New York and elsewhere, DEVEN BLACK, the defendant,
during and in relation to a felony violation enumerated in Title
18, United States Code, Section 1028A(c), to wit, the bank fraud
charged in Count Two of this Complaint, willfully and knowingly
did transfer, possess, and use, without lawful authority, a
means of identification of another person, to wit, BLACK
possessed and used the name, bank account number, and bank
account routing number of another to fraudulently obtain funds
from bank accounts.

(Title 18, United States Code, Sections 1028A and 2.)

The bases for my knowledge and the foregoing charges
are, in part, as follows:

6.    I am a Special Agent with the FBI and have been
so employed for approximately four years.  In my current
position, I investigate violations of federal criminal laws,
including violations of Title 18, United States Code, Sections
1028A, 1344 and 1349.

7.    I have been personally involved in the
investigation of this matter.  This Affidavit is based upon my
personal participation in the investigation, my review of law
enforcement records, and my conversations with other law
enforcement agents.  Because this Affidavit is being submitted
for the limited purpose of demonstrating probable cause, it does
not include all the facts I have learned during the course of my
investigation.  Where the contents of documents and the actions,
statements, and conversations of others are reported herein,
they are reported in substance and in part, except where
otherwise indicated.

### Background

### TD Bank Deposits

8.    Based upon my review of bank records from TD
Bank, I have learned the following:

a.    On or about July 14, 2014, DEVEN K. BLACK,
the defendant, opened a checking account (the "BLACK TD Checking
Account") and the BLACK TD IRA Account at the New City, New
York, branch of TD Bank (the "New City Branch").    BLACK
deposited $120 into the BLACK TD Checking Account, and $300 into
the BLACK TD IRA Account.

b.    On or about July 22, 2014, BLACK deposited a
check in the amount of approximately $69,900 into the BLACK TD
IRA Account.    The payee on the front of the check was "TD Bank
FBO Deven K. Black."[1]    The check ("Victim Check-1") was drawn on
the account of a victim corporation ("Victim Corporation-1").
The front of Victim Check-1 contained Victim Corporation-1's
name and bank account number.    The front of the check was
signed.

c.    On or about July 24, 2014, BLACK visited the
Spring Valley, New York branch of TD Bank (the "Spring Valley
Branch"), and withdrew approximately $69,900 from the Black TD
IRA Account, and deposited the funds, less the applicable
federal tax withholding, into the BLACK TD Checking Account.
BLACK's signature appears on the IRA withdrawal ticket, as does
his social security number and New York driver's license number
and expiration date.    BLACK then withdrew $10,000 from the BLACK
TD Checking Account in cash.    BLACK's signature appears on the
withdrawal receipt, as does his New York Driver's license number
and expiration date.[2]

d.    On or about July 24, 2014, BLACK visited the
New City Branch, and withdrew approximately $10,000 in cash from
the BLACK TD Checking Account.    BLACK's signature appears on the
withdrawal receipt, as does his New York driver's license
number.

---

[1] Based upon my conversation with a TD Bank employee referenced
in Paragraph 9, below, and the Capital One Bank employee
referenced in Paragraph 14, below, I understand that "FBO" means
"For the Benefit Of," and is used most frequently when checks
are mailed to the bank branches, in order to be deposited in
brokerage or IRA accounts for which the bank serves as trustee.

[2] I have compared the driver's license number provided to both TD
Bank and Capital One Bank with the driver's license number
assigned to DEVEN K. BLACK, the defendant, by the New York State
Department of Motor Vehicles, and they are one and the same.

e.    Between on or about July 28, 2014, and on or about July 30, 2014, BLACK visited approximately five different branches of TD Bank and withdrew approximately $42,600 in cash from the BLACK TD Checking Account.  BLACK's signature appears on each withdrawal receipt, and BLACK's New York driver's license number and expiration date appear on several of the withdrawal receipts.

f.    On or about August 1, 2014, a check in the amount of approximately $69,900 was deposited[3] into the BLACK TD IRA Account at the New City Branch.  The payee on the front of the check was "TD Bank FBO Deven K. Black."  The check ("Victim Check-2") was drawn on the account of Victim Corporation-1.  The front of Victim Check-1 contained Victim Corporation-1's name and bank account number.  The front of the check bore the same signature as Victim Check-1.

g.    On or about August 4, 2014, BLACK visited the Elmsford, New Jersey branch of TD Bank (the "Elmsford Branch"), and BLACK withdrew approximately $69,800 from the Black TD IRA Account, and deposited the funds, less the applicable federal tax withholding, into the BLACK TD Checking Account.  BLACK's signature and social security number appear on the IRA withdrawal ticket.  BLACK then withdrew $5,000 from the BLACK TD Checking Account in cash.  BLACK's signature appears on the withdrawal receipt.

h.    Between on or about August 4, 2014, and on or about August 5, 2014, BLACK visited two different branches of TD Bank and withdrew approximately $15,000 in cash from the BLACK TD Checking Account.  BLACK's signature and New York driver's license number and expiration date appear on each withdrawal receipt.

9.    I have spoken with several employees of TD Bank, including the store manager for the New City Branch ("TD New City Manager"), and the Senior Investigator for TD Bank ("TD Investigator").

---

[3] Based upon my conversation with a TD Bank employee referenced in Paragraph 9, below, I understand that it is TD Bank's practice to deposit checks mailed to individual TD Bank branches without requiring the accountholder to come into the bank and endorse the check, so long as the check bears the exact name of the accountholder on the addressee line, and the accountholder's bank account number.

a.     Based upon my conversation with the TD New
City Manager, I have learned the following:

i.     At some point in 2014, DEVEN K. BLACK,
the defendant, visited the New City Branch and asked to open an
IRA account and a checking account.  The TD New City Manager
assisted BLACK in opening the BLACK TD IRA Account and the BLACK
TD Checking Account.  BLACK provided his New York driver's
license as identification, as well as his social security
number.  The New City Manager verified that both the New York
driver's license and social security number were valid, and
matched the identifying information provided by BLACK.  The New
City Manager then input BLACK's New York driver's license number
into the TD Bank computer system.

ii.    It is TD Bank's practice to require a
customer to present both a valid form of identification and
their social security number at the time an account is opened.
The TD Bank employee responsible for opening the account will
input the identification numbers presented by the customer into
their computer system.  It is also TD Bank's practice to verify
that the social security number provided by the customer
pertains to the account of a real person, and that the
identifying information related to that social security number,
including the name and date of birth, matches that provided by
the customer.

iii.   It is also TD Bank's practice to
require that a customer produce the same means of identification
used to open the account when making cash withdrawals.  The TD
Bank teller may not authorize a cash withdrawal unless that
teller has verified that the customer's identification matches
the identification on file.  TD Bank tellers typically note the
identification on the withdrawal slip, for instance, by writing
the driver's license number, to indicate that the verification
was performed.

iv.    TD Bank requires a minimum deposit of
$100 to open a checking account, and $300 to open an IRA
Account.

v.     At the time the Black TD IRA Account
and the BLACK TD Checking Account were opened, BLACK stated, in
sum and substance, that (i) he maintained a personal banking
account at Chase Bank, but wanted to open a second account
because he was going through a divorce; (ii) he had a son; (iii)

he was a schoolteacher in the Bronx; (iv) he was a librarian; and (v) he was looking to buy property in the Bronx.

            vi.     Sometime thereafter, the New City Manager learned that BLACK had made a number of large cash withdrawals.  The New City Branch Manager called BLACK to ask why.  BLACK responded, in sum and substance, that he was buying property, and that he was paying in cash.  When asked why he was withdrawing the cash incrementally, BLACK stated that he was also buying antiques.  BLACK asked, in sum and substance, "what's the problem, it's my money."  The New City Manager asked BLACK whether he was withdrawing money at the direction of another person; BLACK replied that he was not.

            b.     Based upon my conversation with the TD Investigator, I have learned the following:

            i.     On or about July 30, 2014, TD Bank learned that Victim Check-1 did not clear.  After reviewing BLACK's account activity, the TD Investigator called BLACK on or about August 1, 2014.  BLACK stated, in sum and substance, that he had received a wire from a company for which he completed online tutoring, copywriting, and advertising, all via the internet.  The TD Investigator informed BLACK that the deposit in question was a check, and not a wire, and that he would have to pay TD Bank back the amount he had withdrawn.  BLACK replied, in sum and substance, that he could not return the money because he had already used it as a down payment on a house.

            ii.     On or about August 5, 2014, the TD Investigator learned that Victim Check-2 had been deposited into the BLACK TD IRA Account.  The TD Investigator spoke with BLACK that day regarding Victim Check-2.  BLACK stated, in sum and substance, that he had been assured by the person who gave him the first check that the second check was "good."  BLACK stated that he had withdrawn $10,000 already, and had deposited that money into someone else's account at a different bank.  The TD Investigator told BLACK that she believed he had been "scammed," because his contact with the tutoring company referenced in Paragraph 9(b)(i), above, had occurred solely via the internet.  BLACK stated that he would attempt to gather correspondence between himself and the person that had provided him the check, in order to give to the TD Investigator.

            iii.     On or about August 11, 2014, the TD Investigator learned that Victim Check-2 did not clear.  On or about August 18, 2014, BLACK told the TD Investigator, in sum

and substance, that he was still trying to collect information regarding correspondence between himself and the "scammers." BLACK never provided this information to TD Bank.

10.    I have spoken with a representative of Victim Corporation-1.  From that conversation, I have learned that (i) Victim Corporation-1 did not issue Victim Check-1 or Victim Check-2; (ii) Victim Corporation-1, or its authorized signatories, had not authorized payment to, and did not know, DEVEN K. BLACK, the defendant; (iii) Victim Check-1 and Victim Check-2 did not resemble Victim Corporation-1's checks, although they included the correct account number; and (iv) the signature at the bottom of Victim Check-1 and Victim Check-2 did not match that of any authorized signatory or employee of Victim Corporation-1.

<u>Capital One Bank Deposits</u>

11.    Based upon my review of bank records from Capital One Bank, I have learned the following:

a.    On or about December 9, 2014, DEVEN K. BLACK, the defendant, opened a checking account (the "BLACK CO Checking Account") and the BLACK CO IRA Account at a Capital One branch located on Fordham Road in Bronx, New York (the "Fordham Road Branch").

b.    On or about December 27, 2014, BLACK deposited a check in the amount of approximately $64,600 into the BLACK CO IRA Account at a Capital One branch located on East Tremont Road in Bronx, New York (the "East Tremont Branch."). The check was drawn on the account of a victim corporation ("Victim Corporation-2"), and the payee on the front of the check was "CapitallOne [sic] Bank FBO: Deven K. Black" ("Victim Check-3").  The front of Victim Check-3 contained Victim Corporation-2's name and bank account number.  The check was signed on the front, and BLACK's signature was endorsed on the back of the check.  When the deposit was made, BLACK completed a number of Capital One Bank forms, each of which bears BLACK's signature, social security number, and home address.

c.    On or about December 29, 2014, BLACK withdrew approximately $64,100 from the Black CO IRA Account, and deposited the funds into the BLACK CO Checking Account.

d.    Between on or about December 29, 2014, and on or about December 30, 2014, BLACK visited at least two

different branches of Capital One Bank, and withdrew approximately $62,500 in cash from the BLACK CO Checking Account.  BLACK's signature appears on each withdrawal receipt, and his New York driver's license number and expiration date appear on at least one withdrawal receipt.

e.   On or about January 5, 2015, the East Tremont Branch received a Federal Express envelope that contained a check in the amount of approximately $64,600.   The check was drawn on the account of a victim corporation ("Victim Corporation-3"), and the payee on the front of the check was "Capital One Bank FBO: Deven K. Black" ("Victim Check-4").   The front of Victim Check-4 contained Victim Corporation-3's name, and bank account number.

12.   I have spoken with the owner of Victim Corporation-2.  From that conversation, I have learned that (i) Victim Corporation-2 did not issue Victim Check-3; (ii) the owner of Victim Corporation-2, who is the only authorized signatory for Victim Corporation-2's bank account, had not authorized payment to, and did not know, DEVEN K. BLACK, the defendant; (iii) Victim Check-3 did not resemble Victim Corporation-2's checks, although they included the correct account number; and (iv) while the name of the owner of Victim Corporation-2 was signed at the bottom of Victim Check-3, the signature did not resemble the owner's true signature.

13.   Law enforcements officers have spoken with a representative of Victim Corporation-3.  From that conversation, I have learned that (i) Victim Corporation-3 did not issue Victim Check-4; (ii) Victim Corporation-3, or its authorized signatories, had not authorized payment to, and did not know, DEVEN K. BLACK, the defendant; (iii) Victim Check-4 did not resemble Victim Corporation-3's checks, although it included the correct account number; and (iv) the signature at the bottom of Victim Check-4 did not match that of any authorized signatory of Victim Corporation-3.

14.   I have spoken with several employees of Capital One Bank, including the branch manager at the East Tremont Branch (the "East Tremont Branch Manager"). Based upon my conversation with the East Tremont Branch Manager, I have learned the following:

a.   It is Capital One Bank's practice to require photo identification for all IRA deposits and withdrawals.  When an account is opened, a Capital One Bank employee enters that

9

customer's driver's license number into their computer system;
at each subsequent transaction the teller compares the
customer's photo identification to the information recorded in
the computer system.

        b.    On or about December 27, 2014, BLACK visited
the East Tremont Branch in order deposit Victim Check-3.

        c.    Approximately one week later, the East
Tremont Branch Manager learned that Victim Check-3 was
fraudulent.

        d.    On or about January 5, 2015, the East
Tremont Branch received a Federal Express envelope that
contained Victim Check-4.  The East Tremont Branch Manager also
learned on or about that date that Victim Check-4 was
fraudulent.

        e.    On or about January 6, 2015, BLACK visited
the East Tremont Branch.  The East Tremont Branch Manager
advised BLACK that Victim Check-3 was "no good," and asked BLACK
to explain where he had obtained the check.  BLACK replied, in
sum and substance, that he had received the check from his
business partner, with whom he has multiple businesses.  BLACK
stated that new check, Victim Check-4, was sent to the East
Tremont Branch to replace the old check, Victim Check-3.  The
East Tremont Branch Manager decided to call the New York City
Police Department ("NYPD").

        15.    Based on my review of publicly available
information on federal government websites, I know that TD Bank
and Capital One Bank are federally insured institutions, and
were at all times relevant to this investigation.

### Black's Arrest

        16.    Based upon my conversations with other law
enforcement officers, and my review of NYPD arrest records, I
have learned the following:

        a.    On or about January 6, 2015, DEVEN K. BLACK,
the defendant, was arrested by the NYPD in connection with the
deposit of Victim Check-3, and the attempted deposit of Victim
Check-4.  After his arrest, BLACK was advised of his Miranda
rights.  BLACK indicated that he understood his rights, and that
he was willing to speak with the law enforcement officers.
Black made a written statement in which he said the following:

i. Approximately one year prior, BLACK had began engaging in romantic relationships with women he met online, while he and his wife were separated.  BLACK met a woman online ("CC-1"), and they began what BLACK believed to be a romance.

ii. CC-1 promised to visit and have sex with BLACK if he would help her pay her debts, but that it would not cost BLACK anything because "her cousin would provide the money."

iii. Sometime in April 2014, CC-1 approached BLACK with the "idea of going into the cocoa business with her." BLACK stated that he did not have money to invest, but CC-1 stated that BLACK would "just have to make some deposits to pay people for their beans." CC-1 instructed BLACK to open a checking account and an IRA account at TD Bank.  BLACK deposited approximately $800 to 1000 of his money in order to open the accounts.

iv. BLACK was sent a check in the amount of $90,000, which he deposited into the IRA account.  BLACK then moved the money into the checking account, at CC-1's direction. BLACK made a series of withdrawals in the amounts of $5,000 to $10,000, and deposited some portion of the funds into an account at Bank of America, which he understood to be "paying for some aspect of the cocoa business."

v. BLACK learned sometime later that the check he deposited had "bounced." BLACK notified CC-1, and CC-1 said that her uncle would "make it good." At some point thereafter, CC-1 told BLACK that her uncle had paid his debts at TD Bank.

vi. In or about December 2014, CC-1 asked BLACK to open an IRA account and a checking account at Capital One Bank.  BLACK informed CC-1 that he "didn't want to have anything to do with her uncle," but she "assured" BLACK that "she was now dealing with her cousin from the other side of the family and he was a former FBI agent so it would all be above board." BLACK "hesitated," but agreed because he was in debt and behind on his rent.  BLACK asked to take $5,000 of the proceeds, and "was told" he could have $3,000.

vii. At CC-1's suggestion, BLACK opened a checking account and an IRA account at Capital One, and used his own money for the initial deposit.

        viii. On or about December 19, 2014, BLACK learned that a Federal Express envelope containing a check had arrived at the Fordham Road Branch, and on or about December 29, 2014, BLACK brought the check to the East Tremont Branch to deposit. The bank employee filled out the deposit ticket for BLACK, and placed the check face-down for BLACK to endorse.  BLACK claimed that he "never saw the front of the check."

        ix. On or about January 5, 2015, BLACK learned that the check he had deposited had "bounced."  BLACK was "furious" with CC-1 and her cousin and "gave them 24 hours to fix the problem."

        x. BLACK "finally got instructions" to go to the East Tremont Branch to deposit the "good" check to cover the "bad" check.  When BLACK arrived, he told the East Tremont Branch Manager that he had received the check from his business partner, and gave the manager a fake name and real phone number for CC-1's cousin.

### Black's Text Messages

      17.   After his January 6, 2015 arrest by the NYPD, DEVEN K. BLACK, the defendant, gave consent to search his cellphone, a Samsung Galaxy 5S (the "Cellphone").  Based upon my review of the contents of the Cellphone, I learned that BLACK sent and received the following text messages:

        a.   On or about December 19, 2014, BLACK asked CC-1, "I can't check the account on my phone.  Did they deposit it today?"  CC-1 replied, "yes babe its there."  BLACK later responded, "How much did they deposit?"  CC-1 wrote, "64,000."  BLACK wrote, "I will go to the bank when I get off."  On or about December 20, 2014, CC-1 told BLACK that a Federal Express envelope had arrived at Capital One Bank, and provided BLACK with the tracking number and the name of the employee who had signed for the check.  BLACK later wrote that the employee was "not in today" and that "no one else there knew anything about it."

        b.   On or about December 22, 2014, BLACK advised CC-1 that he had spoken with an employee at Capital One, and that the check was available for deposit into his IRA account. CC-1 wrote that BLACK should transfer the funds to his checking account.  Sometime thereafter, CC-1 wrote that "[Victim Corporation-2] … are the ones who sent you the retirement … that

is if they ask if they don't ask then don't tell them anything."
CC-1 added "in [] case they asked you where do you work, you
will tell them you work wit[h]."  BLACK responded, "Babe, you
know how much I hate lying and I'm not happy being put in a
position where I have to lie."  BLACK later wrote, "So what
you're telling me is that this check is the same shit your uncle
pulled."  CC-1 replied, "No babe don't talk like that is not any
shit any me one did before am just trying to tell you."  BLACK
stated, "Please don't put me in positions where I have to lie.
If the money did not come from an ira account why did we deposit
it into one.  The penalty will be 6500$ and I could use that
money a lot more than the IRS."  CC-1 responded that the money
had come from an IRA account, and BLACK wrote, "How can th[e]
money come f[r]om a construction company and f[r]om an ira?," to
which CC-1 responded, "but in case they asked that's what you
going to tell them anyway."

        c.  On or about December 27, 2014, BLACK wrote
CC-1 to say that the deposit had been made, and that he would
pick up the cash the following week.  On or about December 29,
2014, BLACK and CC-1 discussed the amount of money BLACK would
withdraw that day; BLACK subsequently wrote to say that he had
withdrawn $20,000, and would "try for another 20000 at another
branch."  CC-1 then provided two bank account numbers into which
BLACK should deposit the cash he had withdrawn.

        d.  On or about December 30, 2014, BLACK and CC-
1 again discussed the amount of money he would withdraw, and the
sequence in which he would withdraw it.  CC-1 again provided him
with the bank accounts into which he should deposit the cash.
BLACK also wrote to ask an unidentified co-conspirator ("CC-2")
what he should tell the teller the purpose of the deposit was,
and CC-2 responded "Just tell the teller purpose of payment is
for Car Payment Purchased."  BLACK asked, "Two of them? Both
deposits?"  CC-2 responded "Car Payment Deposit!"  BLACK wrote
in response, "I get no damn information and [am] taking all the
risk. I quit."  BLACK, CC-1 and CC-2 then continued to engage in
discussions regarding where to transfer the money, what to tell
the teller, and how much money BLACK could keep for himself.

        18.  I know from my review of the bank records
described in Paragraph 11, supra, that DEVEN K. BLACK, the
defendant, continued to withdraw funds pursuant to this scheme,
including approximately $40,000 on December 30, 2014.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of DEVEN K. BLACK, the defendant, and that he be arrested, imprisoned or bailed, as the case may be.


DEANNA PENNETTA
Special Agent
Federal Bureau of Investigation


Sworn to before me this
31st day of March, 2015


HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK