```
UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA            :

         - v -                      :    15 Cr. 486 (DLC)

DEVEN KEITH BLACK,                  :

              Defendant.            :
-------------------------------------X
```

## SENTENCE MEMORANDUM

 

DAVID E. PATTON, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
**Deven Keith Black**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8722

**JENNIFER L. BROWN, ESQ.**
   - Of Counsel -

TO:    PREET BHARARA, ESQ.
       United States Attorney
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York 10007
       Attn: **REBEKAH DONALESKI, ESQ.**
           Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

October 15, 2015

**By Hand and ECF**

Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: <u>United States v. Deven Keith Black</u>
> 15 CR 486 (DLC)

Dear Judge Cote:

    Mr. Black is a sixty-two year-old man, who during the unraveling of his thirty-year marriage, fell into a deep depression and committed this offense, which was aberrant from how he has lived the rest of his life. Attached to this submission are letters from Mr. Black's family and friends which paint a vivid picture of the man he was during the first sixty years of his life. <u>See</u> Exhibits A-L. Intelligent, ambitious, empathetic, generous, hard-working, concerned with the well-being of others. These are the qualities that defined his character. Those who have known him all of his life cannot understand his offense except in the context of mental illness.

    Mr. Black has only begun to pull himself out of the hole he created for himself over the past fifteen months. He has accepted responsibility for his offense, and is getting appropriate mental health treatment. I ask the Court to consider Mr. Black's many years of law-abiding and productive behavior, the unique combination of circumstances that led to his offense conduct, the limited financial gain he derived from the offense, and his demonstrated commitment to mental health treatment, when determining a sentence "sufficient but no greater than necessary" in this case.

Re: **United States v. Deven Keith Black**
    **15 CR 486 (DLC)**

### Guidelines Range

On July 27, 2015, Mr. Black pleaded guilty, pursuant to plea agreement, to a one count information, charging him with Conspiracy to Commit Bank Fraud. The plea agreement, dated July 20, 2015, sets forth an offense level of sixteen and a criminal history category of I, with a corresponding Stipulated Guidelines Range of 21 to 27 months' in jail. By letter dated September 9, 2015, the Government indicates, that "in light of the proposed amendments to the monetary tables in the United States Sentencing Guidelines that will become effective November 1, 2015 absent Congressional action to the contrary, this Office will not oppose the defendant being sentenced as though the applicable Guidelines range is 15 to 21 months' imprisonment, provided the defendant agrees on the record at sentencing to waive any right to seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c) on this basis." (PSR, ¶8).[1]

### Background

Mr. Black was born in New York City on ▬▬▬▬▬▬▬▬▬ As set forth in detail in the mental health evaluation prepared by Dr. Chriscelyn M. Tussey, Mr. Black's parents had a "terrible marriage" which made the environment in his childhood home "tumultuous." See Tussey Report, attached as Exhibit M, p.2; (PSR, ¶77). His parents fought with each other and repeatedly separated and reunited. Although his parents provided him with all of his material needs, they were "emotionally abusive," which has had a lasting impact on his self-esteem. Id.

Mr. Black's parents separated for good when he was 9. When he was 17, his mother remarried. (PSR, ¶77). On the day his stepfather was scheduled to move in with his mother, Mr. Black left the home, at age 17, never to return. Id.

Mr. Black is an avid reader who is largely self-educated. As a young man, he was an inconsistent student. He was accepted into the selective Bronx Science High School, but left after less than

---

[1] All citations are to the first draft of the presentence report, dated September 18, 2015. To date, I have not yet received the final presentence report.

Honorable Denise L. Cote  
United States District Judge  
Southern District of New York

October 15, 2015  
Page 3

Re: **United States v. Deven Keith Black**  
    **15 CR 486 (DLC)**

a year and transferred to Brandeis High School. Ex. M, p.9. Unable to afford tuition at a private college, Mr. Black enrolled in City College before dropping out to begin a career in radio journalism. Ex. M, at 9-10; (PSR, ¶90). In his father's letter to the Court he notes that "by the time [Deven] reached his late teens and early twenties, he was already one of the best-read people I know." See Letter of Arthur Black, Ex. A.

Mr. Black has had a remarkably diverse and varied career. (PSR, ¶90). In his teens and early twenties, he had his own call-in talk program on a local radio station in Massachusetts. Ex. A. In the 1970's, he was the news director at WCOD in Hyannis, Massachusetts. See Letter of Steven E. Brown, Ex. B.

For nearly twenty years, until the restaurant closed in 2001, Mr. Black managed the North Star Pub at The Seaport in lower Manhattan. (PSR, ¶90); Ex. C-F. Those who worked with Mr. Black at the restaurant recall him as an enlightened manager who would take a chance on hiring disabled employees, made sure his workers' health expenses were covered, and attended the funeral of an NYPD officer who was a regular customer. In his letter, Larry David McCormick, pastor of the Evangelical Lutheran Church in America, recalls the many Boxing Days he spent with Mr. Black at the pub, gathering donations of food and clothing to be shared with needy parishioners in the East Village. Ex. D.

When the restaurant shut down, Mr. Black went back to school to become a teacher. (PSR, ¶87-89). In his letter, Mr. Black's stepfather notes that Mr. Black "went into Special Ed, because he felt he could help children who were most in need of help." Ex. G. In her letter, his wife, Jill Rovitzky Black, notes that he "consistently used his own money to purchase supplies, books, and other materials that the school district was unable to provide." Ex. H.

Mr. Black taught special education in an elementary school for two years and then several more years in a middle school in both special and general education classes. Ex. M, p.10. During the 2010-2011 school year, while he was teaching eighth grade social studies, his principal suggested that he become the school librarian. Ex. M, (PSR, ¶89). Mr. Black got a Masters degree in Library Science and in 2013, was recognized for his work with a "Bammy" award from the Academy of Education Arts and Sciences. Ex. N.

Honorable Denise L. Cote  
United States District Judge  
Southern District of New York

October 15, 2015  
Page 4

Re: **United States v. Deven Keith Black**  
**15 CR 486 (DLC)**

The first incident in the downward spiral that culminated in Mr. Black's offense conduct occurred while he was working as a librarian. He made inappropriate comments to a female student and was formally brought up on charges by the Board of Education. Ex. M, p.10. Although only one of several charges was sustained, he was found to have created an "uncomfortable learning environment." Id. He was suspended for 28 days without pay and removed from the library. He was moved to the "Absent Teacher Reserve" where he worked as a roving substitute teacher, a position he held until his arrest and charges in state court in January 2015. Id.

During this same time, Mr. Black's marriage of thirty-two years was falling apart. The couple saw a marriage therapist. Mr. Black saw a physician who specializes in sexual difficulties because he had no libido and was depressed. Ex. M, p.4. Mr. Black began to spend increasing amounts of time on-line with internet relationships to escape the serious problems in his marriage and his career.

In December 2013, Mr. Black fell down the stairs at his home and broke his neck and cervical vertebrae, which required surgery. (PSR, ¶82); Ex. M, p.8. In the aftermath of his fall, Mr. Black was unable to work or to get out of bed for several weeks. During his recovery, Mr. Black spent more and more of his time on-line, where he corresponded with people in foreign countries he came to believe were his friends.

Of this time period, his wife recalls, "Deven's judgment has . . . increasingly diminished in recent years, with a loss of both common sense and healthy levels of skepticism. . . As his clarity diminished, his perspective became distorted, and the 'friends' he made online became more real and more important to him than his actual family and friends." Ex. H. In September 2014, the couple separated and Mr. Black moved into his own apartment. (PSR, ¶78).

In her letter to the Court, his long-time friend Andrea Mosbacher writes, "[h]e wanted desperately to connect with someone, and the virtual world . . . proved a lot easier for him to inhabit than the real world. One day he told me with great happiness that he'd never had so many friends. He spent all his time on the computer, talking to his new friends." Exhibit I.

Re:  **United States v. Deven Keith Black**
  **15 CR 486 (DLC)**

## Offense Conduct

 In the months leading up to his offense conduct, Mr. Black began behaving more erratically and financially irresponsibly. He started sending large sums of his family's money overseas to strangers who were asking for his help, without consulting his wife. When he continued to send money despite repeated warnings from her and other friends, his wife felt compelled to separate their finances. She opened her own, separate bank accounts and bought him out of his portion of their house. Ex. M, p.11.

 In July 2014, at the direction of one of his online "friends," Mr. Black opened two bank accounts in his own name with his own money. (PSR. ¶11). He had been told by a woman he had met on line that she was living overseas and needed his help. She promised to come to this country to see him once he had helped her. Mr. Black agreed to deposit a $69,900 check she gave him, with her assurance that the check was good. He later withdrew the money and gave it to her.

 On August 1, 2014, Mr. Black was informed by the bank that the check was not good. (PSR, ¶21). When Mr. Black confronted the woman who had given him the check, she promised to replace the money. She gave him another check to deposit and told him her uncle would pay the prior debt to TD bank. (PSR, ¶40).

 This cycle repeated in December 2014 before Mr. Black was ultimately arrested. At the time of his arrest, Mr. Black consented to a search of his phone which contained text messages confirming that he had been acting at the direction of a woman who claimed to live overseas. (PSR, ¶¶41-46). The total amount of the loss to the banks is $146,000. (PSR, ¶51). Of that money, Mr. Black kept less than $5,000. Mr. Black currently has no assets.

 Mr. Black has accepted full responsibility for his offense. He admitted his conduct in a post-arrest statement and consented to a search of his phone. He has written a letter to the Court expressing his remorse and his commitment to full restitution: "I am deeply ashamed at what I have done. Not only have I committed bank fraud, I have thrown away 60 years of law abiding, productive life. . . I am committed to making amends for my crime by paying back all of the money, however long that takes. I have learned my lesson and can assure you I will never get in trouble with the law again." See Ex. O.

Re: **United States v. Deven Keith Black**
     15 CR 486 (DLC)

**Mental Health**

Mr. Black's family and friends have struggled to comprehend how the person they know could commit this criminal offense, in part because he is someone who has never been motivated by greed, money or material possessions. In her letter to the Court, his sister Loren searches for an answer, "I don't know that I will ever understand exactly what happened or why. He had nothing to gain, and ended up losing everything. I truly believe that Deven thought he was helping people, however he let it get out of control and he let it ruin his life." Ex. I.

Varya K. DuCormier, a friend of Mr. Black's since 1967, describes the change she observed in her friend during the past few years: "A few years ago, I noticed a change in Deven. He gradually disengaged from his flesh and blood friends and immersed himself in the cyber universe. I don't claim to be a mental health professional, but I can tell when something is wrong with a friend of almost 50 years. There was a disconnect in our conversations. He would tell me of helping the elderly relatives of African associates at his school, and seemed proud of being able to provide some degree of financial assistance to these people in need." Ex. J.

His stepfather bluntly asks, "How can a person this intelligent be so stupid as to commit a crime? That's the Deven I don't know. He didn't do it to get rich. He has given away all his savings. When his wife Jill learned that he had given out the security information regarding their lines of credit, she changed everything. She then bought Deven's share of the house; Deven also gave that money away. Deven has nothing. Deven, the caring person who wanted to help the world has ruined his own. He has destroyed his future. Why? Hopefully his need of a psychiatrist will be involved in the judgement you pass. Deven desperately needs mental help." Ex. G.

Mr. Black's wife has become so concerned about the changes in her husband's mental health that she believes he may be suffering from the onset of a neurodegenerative disorder, such as frontotemporal dementia. Ex. M, p.12.

Re: <u>United States v. Deven Keith Black</u>
15 CR 486 (DLC)



Honorable Denise L. Cote  
United States District Judge  
Southern District of New York

October 15, 2015  
Page 8

Re: <u>United States v. Deven Keith Black</u>  
15 CR 486 (DLC)



### Present Circumstances

Because of his poor financial choices (i.e. giving away all his money to overseas "friends" in "need"), Mr. Black fell behind in his rent and was evicted from his apartment in May. After living in his car for several weeks and a short stay in a hotel, Mr. Black has been living for the past several months in a homeless shelter. (PSR, ¶78). Regrettably, none of his family members or friends are able to provide him with a place to live. Id.

Mr. Black is actively seeking housing, and is hopeful that he will soon find stable a residence. He is being assisted in this process by Peter Turco and Federal Defender social worker Rachelle Veasley. As a condition of remaining in the shelter where he currently resides, Mr. Black is required to save sixty percent of his paycheck each week. Mr. Black remains employed by the Board of Education and is hopeful that with his regular salary and savings, he will be able to move out of the shelter soon.

Mr. Black was not fired after his arrest by state officials in January 2015, although he is no longer permitted to be in contact with children in the classroom. He performs administrative tasks full-time in the "copy shop." Ex. M, p. 5. Although not intellectually rewarding, Mr. Black is grateful for the steady salary and the structure provided by a full-time job.

If Mr. Black is incarcerated as a result of his offense, he will lose his job. No doubt it will be difficult for Mr. Black, at age 62, with a conviction for bank fraud, to find other employment if he loses his current job.

Since his release from Presbyterian Hospital, Mr. Black's mental health has stabilized. He is adjusting well to his new combination of medications. His father and sister both report that he appears calmer. In his August 2015 treatment summary, Mr. Turco reports, "Mr. Black remains compliant with treatment, both therapy sessions (2X per week) and medication monitoring (bi-monthly), Despite stressful living circumstances, Mr. Black's symptoms appear to be stable with a consistent absence of severe depression symptoms." Mr. Black has developed a strong therapeutic relationship with Mr. Turco, and he is hopeful that the Court's sentence will permit him to continue his treatment with Mr. Turco.

**Conclusion**

In his letter, Stuffy Shmitt, a singer/song writer, who knew Mr. Black from his days managing the pub has summed up concisely and warmly the sentiments of those who know him best: "I am aware that he has pleaded guilty to a felony offense, which surprises me to say the least. The Deven Black I knew was almost bashful, extremely generous, ridiculously intelligent (an avid reader) with a sense of humor, a friend to the freaks, a father to his son and a provider to his wife." Ex. C.

Mr. Black, who was once a journalist, teacher, librarian, restaurant manager and writer, now stands before the Court destitute, homeless, and separated from his family. And yet, the seeds of hope for a brighter future remain. He is still employed. He is benefitting from his current medications and treatment. The qualities that others see in him - generosity, kindness, intelligence, his sense of humor, remain. With appropriate mental health treatment, Mr. Black will make full restitution and he will once again be a lawful and productive member of society.

Re: <u>**United States v. Deven Keith Black**</u>  
    15 CR 486 (DLC)

In her letter to the Court, his wife laments, "I hope that, with help, Deven can find his way back to being the fully productive, contributing member of society he wants to be. I am concerned that imprisonment will be the ultimate impediment to his getting the treatment that he so badly needs and will only contribute to further deterioration of an already unwell person." Ex. H.

I ask the Court to consider all of the factors set forth in 18 U.S.C. §3553(a) in determining a sentence that takes account of the unique circumstances surrounding Mr. Black's offense conduct, his mental health needs, and the many years of law-abiding behavior which preceded his offense conduct. I ask the Court to give full effect to the parsimony clause and to impose a sentence "sufficient but no greater than necessary" in this case.

Respectfully submitted,

Jennifer L. Brown  
Attorney-in-Charge  
(212) 417-8722

cc: Rebekah Donaleski, AUSA  
    Deven Black