

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 23, 2015

**BY ECF**

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Deven K. Black*, 15 Cr. 486 (DLC)

Dear Judge Cote:

      The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for Friday, October 30, at 10:00 a.m., on the defendant's conviction for conspiracy to commit bank fraud in violation of 18 U.S.C. §1349. As set forth in the plea agreement, the parties have stipulated to a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 21 to 27 months' imprisonment (the "Stipulated Guidelines Range"). However, in light of the proposed amendments to the monetary tables in the Guidelines that will become effective November 1, 2015 absent Congressional action to the contrary, the Government does not oppose the defendant being sentenced as though the applicable Guidelines range is 15 to 21 months' imprisonment (the "applicable Guidelines Range"), provided that the defendant waives any right to seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c) on this basis. For the reasons set forth below, the Government believes that a sentence within the applicable Guidelines Range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **I.**     **Factual Background and Procedural History**

      During an investigation conducted by the New York City Police Department ("NYPD") and Federal Bureau of Investigation ("FBI"), agents learned that from in or about July 2014 to in or about January 2015, the defendant conspired with others to execute a scheme to defraud two federally insured financial institutions: Capital One Bank and TD Bank. (PSR ¶¶ 11, 26.) As part of the scheme, the defendant opened checking and IRA accounts, and then deposited fraudulent checks worth more than $208,000, drawn on the corporate accounts for an assisted living facility in Michigan, a construction company in New Jersey, and a construction company in California. (*Id.* ¶¶ 11-18, 26-34). The checks were each made out to the defendant, and the defendant personally withdrew more than $146,000 — in cash — of the stolen funds. (*Id.*).

The defendant's large cash withdrawals eventually raised suspicions at the TD Bank and Capital One branches he visited, as did his varying explanations for the sources of the funds: he was going to buy property in the Bronx (PSR ¶¶ 19-20); he received the checks as payment for online tutoring (*id.* ¶ 21); and he received the checks from his business partner, with whom he owns several businesses (*id.* ¶ 35). Ultimately, the defendant was arrested by the NYPD after he attempted to deposit a fraudulent check on or about January 6, 2015. (*Id.* ¶¶ 35-36). Following his arrest, the defendant agreed to speak with law enforcement officers, and gave consent to search his cellphone. (*Id.* ¶ 36). The defendant made a written statement in which he explained, among other things, that he had deposited the checks at the instruction of an individual with whom he had engaged in a romantic relationship online, and that the checks were meant to fund their entry into the cocoa business together. (*Id.* ¶¶ 36-45). A search of the defendant's text messages revealed detailed correspondence with unidentified co-conspirators regarding where, when, and how to make the fraudulent deposits, what to tell the bank employees when they asked about the source of the funds, and how much the defendant could keep for himself. (*Id.* ¶¶ 46-50).

On March 31, 2015, the defendant was charged by complaint with conspiracy to commit bank fraud and aggravated identity theft in violation of 18 U.S.C. §§ 1349 and 1028A, and he was taken into federal custody on April 1, 2015. On July 27, 2015, the defendant was charged in, and pleaded guilty to, a one-count Information with conspiracy to commit bank fraud.

## II. Presentence Investigation Report

The United States Probation Office ("Probation") agrees with the calculation of the Stipulated Guidelines Range set forth in the Plea Agreement between the defendant and the Government. Specifically, both Probation and the parties agree that the defendant's Guidelines offense level is 16 and his Criminal History Category is I, resulting in a sentencing range of 21 to 27 months' imprisonment. (PSR ¶¶ 58-73.) Both Probation and the parties have noted that, in light of the proposed amendments to the monetary tables in the Guidelines that will become effective November 1, 2015 absent Congressional action to the contrary, the Government does not oppose the defendant being sentenced as though the applicable Guidelines range is 15 to 21 months' imprisonment. (*Id.* ¶ 8).

Probation recommends a sentence of time served, to be followed by three years of supervised release, including 200 hours of community service. (PSR at 22-23). The defendant asks the Court to impose a sentence "sufficient but no greater than necessary," but does not request a specific sentence. (Def. Br. 10).

## III. Discussion

The Government respectfully submits that a sentence within the applicable Guidelines Range is appropriate in this case.

*First*, a sentence within the applicable Guidelines Range is necessary to reflect the seriousness of the defendant's conduct. 18 U.S.C. § 3553(a)(2)(A). Although the Government

2

recognizes the sympathetic circumstances in the defendant's sentencing submission, the defendant nonetheless committed a very serious and harmful crime that had a real impact on its victims. As set forth in the victim impact letter filed on behalf of Linden Square Assisted Living Center, the "fraudulent activity [a]ffected staff at both the corporate office and site level," and resulted in both lost time and money for the business. (*See* Johnson Letter, dated October 20, 2015). Similarly, as described in the victim impact letter filed on behalf of ConcreteAccessories.com, the impact of the fraudulent scheme resulted in an "extremely difficult period for us trying to stop the bleeding, [which included] chang[ing] all of our accounts, [and hiring] monitoring companies." (*See* Kassarjian Letter, dated October 22, 2015). Indeed, Mr. Kassarjian reports that "[w]e are still trying to recover after almost 10 months." (*Id.*).

*Second*, a sentence within the applicable Guidelines Range is necessary to afford adequate deterrence to the defendant and others similarly situated, as well as to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B)-(C). Bank fraud and identity theft are widespread and prevalent crimes that significantly impact victims and financial institutions. A sentence within the applicable Guidelines Range would signal to others who might consider engaging in a similar scheme that "this behavior is unacceptable" and carries significant consequences. (*See* Johnson Letter, dated October 20, 2015).

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the applicable Guidelines Range as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/
Rebekah Donaleski
Assistant United States Attorney
(212) 637-2423

cc: Jennifer L. Brown, Esq. (by ECF)

Linden Square Assisted Living Center
950 Taylor Avenue
Grand Haven, MI 49417

October 20, 2015

Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Cote,

I am writing this letter on behalf of Linden Square Assisted Living Center which had its identity stolen and fraudulent checks written from their bank account. This fraudulent activity effected staff at both the corporate office and site level. The site had to answer and address several phone calls from victims that received fraudulent checks from our bank account. They directed the callers to our corporate office where I work and we handled it. The process to resolve this became a daily choir and took several hours each day. Each time a check recipient called our office I had to document their story and contact our banking institution.

The first time this happened we had to close out our account and order all new checks. We were unable to process any payments until our new checks arrived. We also had to initiate a positive pay process with our banking institution which monitors and protects us from fraudulent checks and this process is something extra that we now pay a monthly fee for. There is also additional work each time a check is cut as I have to upload the check register to the bank which is something that wasn't needed prior.

Our account had more fraudulent checks come through even after the positive pay was set up and we are thankfully protected but I still have to monitor our account and return these checks as they come through. Hopefully now we will be back on track.

Thank you for your time and we hope you invoke a punishment that fits the crime that this person has committed and we hope that it also sends a message that this behavior is unacceptable.

Sincerely,

*Jill Johnson*

Jill Johnson
Accountant
Heritage Property Management, Inc.

October 22, 2015

Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Deven Black

Honorable Judge,

My name is Vasken Kassarjian, I am the President of ConcreteAccessories.com in Fullerton, Ca.
We are a small company that got started in 2012, currently employing 22 employees.
Late in 2014 we had several events where our identity, check design and e mail were stolen.
Subsequently we lost close to $300,000. A few of those events were fraudulent checks being cashed
At different locations by Mr. Black.
It was an extremely difficult period for us trying to stop the bleeding, changed all our accounts, hired identity monitoring companies for corporate and personal accounts.
Changed all our procedures with our banks to report every check before we actually send them out.
We are still trying to recover after almost 10 months.

Sincerely,
Vasken Kassarjian
President
Concreteaccessories.com